IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of: | ) | |
| | ) | No. 40880-9-III |
| | ) | |
| A.K. | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

COONEY, J. — Kristina Keys is the biological mother of A.K. Following a bench trial, the superior court granted Tonya Thompson and Brenda White[1] guardianship of A.K. The trial court found, in part, that Ms. Keys' failure to perform parenting functions constituted neglect of a minor. The court also limited Ms. Keys' decision-making authority over A.K and her residential time with A.K. under RCW 26.09.191.

Ms. Keys appeals, arguing the court's conclusion that she neglected A.K. and the restrictions imposed under RCW 26.09.191 should be struck from the guardianship order. We agree in part. We remand for the court to strike its conclusion of neglect, and we otherwise affirm.

---

[1] Brenda White passed away shortly after the trial, and Darla White took over the "care and custody" of A.K. for the final five months of her minority. Limited Responsive Br. of White at 4. For clarity, we refer to Brenda and Darla by their first names. No disrespect is intended.

BACKGROUND

In 2023, Ms. Thompson petitioned for emergency guardianship of her then 16-year-old niece, A.K., due to safety concerns involving Ms. Keys' boyfriend, Jereme Bassett. Mr. Bassett had been convicted of murder in the second degree related to the death of a child and "assault of a child [in the third degree] domestic violence." Verbatim Rep. of Proc. (VRP) at 209. Ms. Thompson was granted temporary guardianship of A.K. during the pendency of her petition for a minor guardianship.

Ms. Keys objected to the appointment of a guardian and moved to dismiss the emergency temporary guardianship. In her motion to dismiss, Ms. Keys alleged that A.K. was residing with Brenda, the partner of A.K.'s late paternal grandfather. Though the court took exception to A.K. residing with Brenda in violation of the temporary guardianship order, it denied Ms. Keys' motion to terminate the emergency guardianship and permitted Brenda to join Ms. Thompson as temporary co-guardian.

The matter proceeded to a bench trial in July 2024. Odessa Police Chief Ericka Rose testified she became acquainted with Ms. Keys while investigating a case in which she was involved and had supervised a few of Ms. Keys' visits with A.K.'s sister. Chief Rose stated Ms. Keys and Mr. Bassett are "boyfriend and girlfriend," and Mr. Bassett posed "a risk of harm to a child." VRP at 160. She testified that Mr. Bassett had been convicted of murder in the second degree following the death of a child.

Community Corrections Officer (CCO) Nicholas Nanez testified that Ms. Keys agreed to be Mr. Bassett's "sponsor." VRP at 209. Based on Mr. Bassett's "murder [in the second degree] and assault of a child [in the third degree] domestic violence" convictions, he was prohibited from being alone with children. VRP at 209. Ms. Keys acknowledged she was aware of Mr. Bassett's restrictions. CCO Nanez testified that Mr. Bassett was recently a fugitive with a warrant out for his arrest and that he believed Ms. Keys knew where Mr. Bassett was staying. CCO Nanez did not believe A.K. would be safe around Mr. Bassett "due to [Mr. Bassett's] extensive use of substances," including methamphetamine, and anger issues. VRP at 214. CCO Nanez stated Ms. Keys had reported Mr. Bassett's aggression and drug use and that she did not want Mr. Bassett in her residence. CCO Nanez testified that Mr. Bassett had "go[ne] on the run" several times prior and had been caught with Ms. Keys. VRP at 212.

Connie Shields was A.K.'s guardian ad litem. Ms. Shields consistently recommended A.K. remain in a guardianship. Ms. Shields believed the relationship between A.K. and Ms. Keys appeared to be worsening with A.K. reporting "physical altercations" between her and Ms. Keys. VRP at 290. Ms. Shields stated A.K. told her that Ms. Keys "started using alcohol more," was seeing Mr. Bassett, and A.K. did not "feel safe in her household." VRP at 309. Ms. Shields testified A.K. was confused as to why Ms. Keys "would let someone who murdered a baby and choked another baby into

3

her home." VRP at 309. Ms. Shields believed A.K. needed to reside with Brenda and Ms. Thompson should be a co-guardian.

Brenda was A.K.'s grandmother. Brenda testified that she was concerned that A.K. had missed too much school while in Ms. Keys' care and that she "was not up to grade level." VRP at 235. Brenda explained that A.K. had been doing well since enrolling in school, and "they consider her college material and gave her upper tier classes." VRP at 235. Brenda believed it was in A.K.'s best interest to reside with her and she was prepared to care for A.K.

Ms. Thompson testified that A.K. started spending more time at her house because she did not want to be around Mr. Bassett. Ms. Thompson stated that Mr. Bassett would not let her take A.K. or A.K.'s sister to school. When Ms. Thompson broached these issues to Ms. Keys, Ms. Keys replied, "[I]t was none of [Ms. Thompson's] business and [Ms. Thompson] was no longer allowed to see the children." VRP at 177. Ms. Thompson testified that A.K. gets physically sick and "shakes from the inside out" every time she communicates with Ms. Keys. VRP at 180. Ms. Thompson recounted that Ms. Keys had sent text messages to A.K. telling A.K. that she wants "nothing to do with [A.K.] until [A.K.] stop[s] lying" and calling A.K. "nothing but a little liar." VRP at 181.

A.K. testified that Ms. Keys did not make her attend school. A.K. disclosed, "[W]hen I was younger, [Ms. Keys] told me that if I told anyone, especially a therapist or

4

school counselor what happened in that house, I would be taken away and raped." VRP at 249.

A.K. testified that Ms. Keys was "drinking a lot" while they lived in Montana. VRP at 250. A.K. believed it was best for her to remain with Brenda and confirmed she would feel safe with Brenda and Ms. Thompson as her co-guardians. She stated Ms. Keys did not maintain a stable, loving, or nurturing relationship with her. A.K. testified there was a time when Ms. Keys was a good mother, but "it all went downhill when she decided to choose drugs and alcohol over [A.K. and her sister]." VRP at 272. A.K. stated Ms. Keys used to drink every night and would become violent. She testified about an incident, about five years prior, when Ms. Keys strangled A.K. until she almost passed out.

A.K. stated Ms. Keys "chose" Mr. Bassett over her and her sister and that she does not feel safe in "that situation." VRP at 251. She testified to an incident in which Ms. Keys grabbed her hair and pushed her to the floor. A.K. got up and ran to the front door until Mr. Bassett grabbed her, pushed her to the ground, climbed on top of her, and held her on the floor until she "couldn't breathe." VRP at 253. She stated Ms. Keys did not protect her from Mr. Bassett's assault. At the time of trial, A.K. believed that Mr. Bassett was still living with Ms. Keys. A.K. testified that "the damage can't be undone," and she does not know if she ever wants to talk to Ms. Keys again. VRP at 273.

5

Ms. Keys denied that she or Mr. Bassett ever assaulted A.K. and testified that she tried "to get [A.K.] to go to school." VRP at 327. Ms. Keys also denied currently using alcohol, although she admitted to drinking when she lived in Montana and to a "disorderly conduct" conviction in Montana. VRP at 330. She testified she was drinking at the time of the incident giving rise to the charge. Ms. Keys testified that she would not allow Mr. Bassett to be around A.K. if she was returned to her care. She also testified she had a job "as a traveling nurse." VRP at 341.

During closing arguments, Ms. Keys' attorney stated that Ms. Keys "agreed that [A.K.] can stay with Brenda . . . and it's a good relationship." VRP at 391. Ms. Keys' attorney argued, "The only thing that she has problems with is the finding that she's— drugs, and she's neglected her daughter, she's abused her daughter,—assaulted her daughter. She—she has trouble agreeing to that." VRP at 391.

The court appointed Brenda and Ms. Thompson as co-guardians of A.K. at the conclusion of trial. The court found Ms. Keys was "not credible" and found her failure "to perform parenting functions as defined in RCW 26.09.004 to be neglect of a minor." Clerk's Papers (CP) at 57. The court also limited Ms. Keys' decision-making authority and visitation based on numerous "[m]andatory limiting factors from RCW 26.09.191(2)." CP at 62. Under RCW 26.09.191(2), the court specifically found that Ms. Keys "neglect[ed]" A.K. by "substantially refusing to perform [her] parenting duties" and that Ms. Keys or someone living in her home (1) physically "abused or

6

threatened to abuse" A.K., (2) "had a history of domestic violence," and (3) "assaulted or sexually assaulted someone causing grievous physical harm, causing fear of such harm, or resulting in a pregnancy." CP at 62.

The court also found "[o]ther limiting factors from RCW 26.09.191(3)." CP at 62. Specifically, under RCW 26.09.191(3), the court found that Ms. Keys: (1) "neglected [her] parental duties towards" A.K., (2) "had a long-term problem with drugs, alcohol, or other substances that gets in the way of their ability to parent," (3) "has few or no emotional ties with" A.K., and (4) "uses conflict in a way that endangers or damages [the] psychological development of" A.K. CP at 62-63.

Ms. Keys filed a motion for reconsideration and a petition to terminate the guardianship. The motion and petition were both denied.

Ms. Keys timely appeals.

## ANALYSIS

### MOOTNESS

Darla White requests this appeal be dismissed as moot because A.K. is now over the age of 18 and no longer subject to the guardianship. Ms. Keys claims the appeal is not moot due to the collateral consequences flowing from the court's findings and conclusions. We agree with Ms. Keys.

"'An appeal is moot where it presents purely academic issues and where it is not possible for the court to provide effective relief.'" *In re Dependency of H.S.*, 188 Wn.

App. 654, 662, 356 P.3d 202 (2015) (quoting *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390 (1993)).  If an issue is moot, the court has discretion "to retain and decide an appeal . . . if it involves a question of continuing and substantial public interest."  *Klickitat County*, 122 Wn.2d at 632.

The trial court concluded Ms. Keys had neglected a minor and, for purposes of RCW 26.09.191, found that Ms. Keys, or someone living in her home, had engaged in neglect, child abuse, domestic violence, and assault.  Ms. Keys is a nurse, and her "profession [is] subject to exacting regulation and personal scrutiny."  Br. of the Appellant at 45.  Ms. Keys testified that her professional license was previously revoked due to a finding of neglect by Child Protective Services.  Ms. Keys contends she is also going through a contentious divorce and child custody proceedings where the finding of neglect can be used against her.

Collateral estoppel applies to findings of abuse and neglect because the findings may be used to estop a parent from attempting to attack the issue in a later proceeding.  *H.S.*, 188 Wn. App. at 661.  In *H.S.*, this court held that although the child at issue had reached the age of majority, the father's appeal was not moot "because he can still be afforded meaningful relief since notable collateral consequences flow from a dependency finding."  *Id*. at 661-62.

Ms. Keys may avoid collateral consequences depending on the outcome of this appeal.  Thus, the appeal is not moot.

CONCLUSION OF NEGLECT UNDER RCW 11.130.185(2)(C)

Ms. Keys argues the trial court erred in concluding that her failure to perform parenting functions amounted to neglect of a minor. We agree the court unnecessarily reached this conclusion.

Chapter 11.130 RCW governs guardianships, among other protective arrangements. In relevant part, RCW 11.130.185 states:

> (2) The court may appoint a guardian for a minor who does not have a guardian if the court finds the appointment is in the minor's best interest and . . . .
>
> . . . .
>
> (c) There is clear and convincing evidence that *no parent of the minor is willing or able to exercise parenting functions as defined in RCW 26.09.004.*

(Emphasis added.) "Parenting functions" are defined as "those aspects of the parent-child relationship in which the parent makes decisions and performs functions necessary for the care and growth of the child." RCW 26.09.004(2).

In regard to RCW 11.130.185(2)(c), the court found and concluded:

> 2.3 The Court finds the testimony and exhibits during trial meets the standard of clear and convincing evidence that no parent of the minor is willing or able to exercise parenting functions as defined in RCW 26.09.004, pursuant to RCW 11.130.185.
>
> 2.4 *The Court finds the failure of KRISTINA KEYS to perform parenting functions as defined in RCW 26.09.004 to be neglect of the minor.*

CP at 57 (emphasis added).[2]  Although neither chapter 11.130 RCW nor RCW 26.09.004

contain the term "neglect," the trial court concluded that Ms. Keys neglected a minor.

Such a conclusion is irrelevant to a minor guardianship and potentially subjects Ms. Keys

to collateral consequences.  *E.g.*, RCW 26.44.050.  To grant a petition for a minor

guardianship, RCW 11.130.185(2)(c) merely requires the trial court to find that no parent

is able or willing to exercise parenting functions.  Here, the court made these necessary

findings in finding of fact 2.3.

The court's conclusion that Ms. Keys neglected a minor is unnecessary for

purposes of RCW 11.130.185(2)(c) and is therefore surplusage.  We remand for the court

to strike finding of fact 2.4.  With this holding, we decline review of Ms. Keys' additional

arguments related to finding of fact 2.4.

LIMITATIONS UNDER RCW 26.09.191

Ms. Keys argues the court erred in ordering limiting factors under RCW 26.09.191

because "[n]o party ever referenced or addressed RCW 26.09.191 at trial, including in

closing statements" and because a hearing was never held for the court to conduct an

RCW 26.09.191 analysis.  Br. of the Appellant at 35-36.  Notably, Ms. Keys does not

---

[2] Although labelled a finding of fact, the court concluded Ms. Keys neglected a minor.  We review a conclusion of law erroneously labeled as a finding of fact as a conclusion of law.  *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

argue the court's findings are not supported by substantial evidence. We disagree the court erred in ordering limitations under RCW 26.09.191.

"In matters affecting the welfare of children . . . the trial court has broad discretion, and its decisions are reviewed only for abuse of discretion." *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). A trial court abuses its discretion "when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices given the facts and applicable legal standard. *Id.* A trial court's decision is based on untenable grounds or untenable reasons if it is based on unsupported factual findings or an incorrect standard. *Id.*

RCW 11.130.215(4) states:

> The court, as part of an order appointing a guardian for a minor, shall state rights retained by any parent of the minor, which shall preserve the parent-child relationship through an order for parent-child visitation and other contact, *unless the court finds the relationship should be limited or restricted under RCW 26.09.191 or RCW 26.09.192*; and which may include decision making regarding the minor's health care, education, or other matters, or access to a record regarding the minor.

(Emphasis added.) Absent from this statute is a requirement that a parent first request decision-making authority or residential time before limitations are ordered under RCW 26.09.191. Consequently, the court's invocation of RCW 11.130.215(4) is not contingent on a parent's request for decision-making authority or residential time.

11

Importantly, former RCW 26.09.191(1) and (2)(a) (2022) mandate limitations on a parent who has engaged in certain conduct. Former RCW 26.09.191(1) states:

> The permanent parenting plan *shall not require mutual decision-making . . .* if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) a history of acts of domestic violence as defined in RCW 7.105.010. . . .

(Emphasis added). Similarly, former RCW 26.09.191(2)(a) provides:

> The *parent's residential time with the child shall be limited* if it is found that the parent has engaged in any of the following conduct: (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (ii) physical, sexual, or a pattern of emotional abuse of a child; (iii) a history of acts of domestic violence as defined in RCW 7.105.010. . . .

(Emphasis added). Limitations are also required if the parent resides with someone who has engaged in the physical or emotional abuse of a child, has a history of acts of domestic violence as defined in RCW 7.105.010, or has a history of assault that causes grievous bodily harm. Former RCW 26.09.191(2)(b).

Here, the court found that (1) Ms. Keys "[n]eglect[ed]" A.K. because she substantially refused to perform parenting functions and that (2) Ms. Keys or someone living in her home "abused or threatened to abuse a child," "has a history of domestic violence," and "has assaulted . . . someone causing grievous physical harm, causing fear of such harm." CP at 62. Because Ms. Keys challenges the procedure by which the limitations were imposed, rather than claiming the court's findings are not supported by

substantial evidence, the court's findings are verities on appeal. *In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019). Based on these verities, the court was required to limit Ms. Keys' decision-making authority and residential time with A.K.

In addition to the mandatory limitations under former RCW 26.09.191(1), (2)(a), and (2)(b), the court had discretion to "preclude or limit" a parent's involvement or conduct if the court found:

> (a) A parent's neglect or substantial nonperformance of parenting functions;
> (b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;
> (c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;
> (d) The absence or substantial impairment of emotional ties between the parent and the child;
> (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development. . . .

Former RCW 26.09.191(3).

Here, the court found that Ms. Keys: (1) neglected her parental duties to A.K.; (2) "has a long-term problem with drugs, alcohol, or other substances" that interfered with her ability to parent; (3) has few or no emotional ties with A.K.; and (4) "uses conflict in a way that endangers or damages the psychological development" of A.K. CP at 63. Again, Ms. Keys does not challenge these findings. Based on these verities,

the court had the discretion to limit Ms. Keys' decision-making authority and residential time with A.K.

In passing, Ms. Keys argues the court was required to have her "'screened to determine the appropriateness of a comprehensive assessment regarding the impact of the limiting factor on the child and the parties.'" Br. of the Appellant at 35 (quoting former RCW 26.09.191(4)).

Assuming the court was required to have Ms. Keys screened to determine the appropriateness of a comprehensive assessment, former RCW 26.09.191(4) is only triggered on a finding that a parent's conduct falls under former RCW 26.09.191(2)(a)(ii) or (iii). In addition to finding Ms. Keys' conduct fell under (2)(ii) and (2)(iii), the court also made findings against Ms. Keys under former RCW 26.09.191(1), (2)(i), (3)(a), (3)(c), (3)(d), and (3)(e). These subsections do not require the court to screen the parent to determine the appropriateness of a comprehensive assessment. Thus, Ms. Keys was not prejudiced by the court's purported failure to comply with former RCW 26.09.191(4).

The court did not err in limiting Ms. Keys' decision-making authority or residential time with A.K. under RCW 26.09.191.

## CONCLUSION

We remand for the limited purpose of the court striking finding of fact 2.4 and affirm the trial court's limitations on Ms. Keys' parenting under RCW 26.09.191.

14

No. 40880-9-III

*In re Guardianship of A.K.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Staab, C.J.

_____
Hill, J.

15